HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE ESTATE OF SEAN THOMAS
MAKAROWSKY, et al.,

            Plaintiffs,

    v.

STEVE LOBDELL, et al.,

            Defendants.

Case No. CV10-5423 RBL

ORDER ON DEFENDANTS
McNICHOLAS & COOK'S MOTION
FOR SUMMARY JUDGMENT
[Dkt. #13].

## I. SUMMARY

This matter comes before the Court on Defendants Duane McNicholas's and Clifford Cook's motion for summary judgment. Dkt. #13. Defendant McNicholas is a Vancouver police officer who participated in the planning and execution of a search warrant at the home of Sean Makarowsky on June 16, 2007. Defendant Cook is the acting Vancouver Police Chief. Moments before the warrant was executed, Makarowsky was shot and killed by another Vancouver police officer, Defendant Steve Lobdell. Dkt. #20 at 2.

Plaintiffs are the representatives of Makarowsky's estate. They filed suit against Defendant officers Lobdell, Bryan Acee, McNicholas, and Cook, as well as the City of Vancouver. Plaintiffs assert 42 U.S.C. § 1983 claims for use of excessive force, unreasonable execution of a search warrant, interference with

ORDER
Page - 1

parent-child relationship, and wrongful death. Dkt. #1. Neither McNicholas nor Cook actually shot Makarowsky. Plaintiffs claim that McNicholas was responsible for planning and executing the search warrant, and is thus liable for its unreasonable execution. Dkt. #20. Plaintiffs concede that there is insufficient evidence supporting their claims against Cook, and accordingly do not oppose the dismissal of all claims against him. *Id*.

McNicholas seeks a ruling that he is not liable as a matter of law because supervisors may not be held liable for the actions of their subordinates. Dkt. #13. McNicholas also claim she did not violate Makarowsky's constitutional rights and he is entitled to qualified immunity. *Id.* The Court has reviewed the parties' submissions and the motion for summary judgment is hereby GRANTED. The reasons for the Court's order are set forth below.

## II. FACTUAL BACKGROUND

The following alleged facts are set forth in the light most favorable to Plaintiffs.

Portland Metro Gang Task Force contacted Defendant Officer Bryan Acee on June 14, 2007 and informed him of a conversation it had recorded between known gang member Raymond Mosley and an informant. Dkt. #13 at 2. During the conversation, Mosley stated there would be a robbery at the home located at 3010 NE 162nd Avenue in Vancouver, Washington. *Id.* at 2. Mosley identified the target of the robbery as an older white male. *Id.* at 3. According to the Portland Police, Mosley chose this home because he believed it to have a marijuana growing operation and large amounts of money inside. *Id.* The alleged plan was to first go to a home on Watson Avenue in Vancouver to obtain firearms, and then head to the second home for the robbery. *Id.* Acee, the lead detective on the case, later identified the target of the robbery to be Erik Paulsen, who had five outstanding warrants for his arrest in Clark County. *Id.*

This information was presented to Clark County District Court Judge Darvin Zimmerman. The judge signed a search warrant for both addresses on June 15, 2007. Dkt. #1, ¶ 5.6. The warrant allowed police to search for weapons at the Watson address, and Paulsen himself and all documentation leading to the

whereabouts of Paulsen at the second address. Dkt. #13 at 3-4. Portland police asked that the warrant not be executed until they had arrested Mosley, for purposes of officer safety and preservation of the investigation. *Id.* at 4.

After receiving authorization from Portland Police, on June 16, 2007, the officers executed the search warrant. Six officers lined up at the front door of Paulsen's home in "stick" formation, preparing to enter. Dkt. #1, ¶ 5.9-5.10. McNicholas went to the side of the house to secure the garage. *Id.* Defendant Lobdell was positioned at the end of the "stick." He saw an unidentified man inside carrying a gun, and fired two rounds. Dkt. #13 at 4. The man, Makarowsky, was killed. Dkt. #1, ¶ 5.10. The officers entered the home after Lobdell shot Makarowsky. *Id.* at ¶ 5.12.

Plaintiffs allege that officers failed to "knock and announce" their presence before Lobdell shot Makarowsky. *Id.* at ¶ 5.11. They seek to hold McNicholas liable for the alleged knock and announce failure because McNicholas was the supervisor on scene and was personally involved in formulating and executing the search warrant in, what they claim, was an unreasonable manner. *Id.* at 7.3.

McNicholas seeks summary judgment on the ground that supervisors may not be held liable under §1983 claims for the actions of their subordinates. McNicholas also asserts that there was no Fourth Amendment violation because the shooting occurred before the officers had a chance to knock and announce, thereby rendering irrelevant their alleged failure to knock and announce. Dkt. #23 at 3. Plaintiffs claim that because McNicholas actively participated in the planning and execution of the search warrant, and because the search warrant was executed without the requisite knock and announce, he is liable for an invalid search. Dkt. #20 at 3.

### III. DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter

of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

B. Qualified Immunity

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982). In analyzing a qualified immunity defense, the Court must determine whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id.* The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Thus,

only gross incompetence is punished; reasonable mistakes are immunized. The burden is on the defendant to prove that his or her actions were reasonable given the circumstances. *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1459 (9th Cir. 1995).

The Supreme Court recently held "that the *Saucier* protocol should not be mandatory in all cases ... [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case, it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established.

Supervisors may be vicariously liable for constitutional violations under § 1983 claims if a plaintiff can show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). In § 1983 suits, supervisors "may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995) (quotations and citations omitted) (emphasis in original). A causal connection may be established "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740 743-44 (9th Cir. 1978). Thus, in order to establish McNicholas's liability for the shooting, Plaintiffs must show either that McNicholas's own actions violated the Fourth Amendment, or that he set in motion a series of acts that caused Makarowsky's rights to be violated.

Plaintiffs assert that McNicholas is responsible for executing an invalid search on the night of the shooting because no knock and announce occurred and McNicholas was in charge of the operation. "The common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." *Hudson v. Michigan*, 547 U.S. 586, 589 (2006). *See also* RCW 10.31.040. McNicholas specifically included in his mission statement for the search warrant language regarding knock and announce. Dkt. #15 at 40. The safety plan worksheet stated, "Entry officers will knock

and announce police with a search warrant we demand entry. Officers will wait a reasonable period of time, while waiting officers will check the front door to determine if it is unlocked." *Id.* It is true that McNicholas formulated the raid plan and the risk assessment paperwork, but there is nothing to suggest he did this improperly. As a matter of law, McNicholas's involvement in the preparation of the search warrant was proper, and was not itself a constitutional deprivation.

Plaintiffs argue that the warrant's execution was underway when Makarowsky was shot. They offer evidence from Makarowsky's neighbor, Richard Ives, and Makarowsky's girlfriend, Megan Hays, in support of their assertion that officers did not knock and announce before attempting to enter. Dkt. #20. Makarowsky was on the phone with Hays when he heard his dog barking and told her he would call her back. *Id.* at 5. He did not hang up the phone, and Hays claims she heard loud thumps and a barking dog over the phone. *Id.* at 12. Ives similarly claims he heard loud bangs, a barking dog, and gunshots. *Id.* Plaintiffs claim that the loud thumps are evidence of the police breaching the doorway with a battering ram. *Id.* Both Hays and Ives assert they did not hear police knocking and announcing their presence. *Id.*

However, the shooting of Makarowsky occurred before the execution of the search warrant. Dkt. #20 at 2.[1] Plaintiffs specifically assert that "officers failed to knock and announce their presence *prior* to the shooting and killing [of] MAKAROWSKY." *Id.* at 12 (emphasis added). Therefore, whether officers knocked and announced their presence is irrelevant to Makarowsky's death. The search had not yet begun when shots were fired and McNicholas was not personally involved in the shooting. There is no causal link between the two events. The search warrant - faulty or not- was not the cause of Makarowsky's death.

Even if Ives and Hays's testimony is evidence that the required knock and announce did not occur, there is nothing to suggest McNicholas himself is responsible for this. Ives and Hays's statements do not

---

[1] Although Plaintiffs response to Defendants' summary judgment motion makes reference to the absence of knock and announce before the breach of the doorway, rather than just before the shooting, Dkt. #20 at 13, Plaintiffs complaint admits that the execution of the search warrant had not begun at the time the shooting occurred. Dkt. #1,¶ 5.12. Further, Plaintiffs failed to respond to Defendants' requests for admissions, and pursuant to F.R.C.P. 36(a)(3), requests for admissions not denied within thirty days are deemed admitted. Thus, Plaintiffs irrevocably admit the statement "Defendant Lobdell fired both shots before the front door of the house was breeched [sic]," Dkt. #24, Request for Admission #6, at 11.

ORDER
Page - 6

address the actions of McNicholas. In order for McNicholas to be liable, Plaintiffs must show that his own actions violated the Fourth Amendment or that there is a causal connection between McNicholas's actions and the constitutional violation. *Mackinney*, 69 F.3d at 1008. Plaintiffs agree that McNicholas was at the side of the home near the garage at the time Lobdell fired shots. Dkt. #1 at 10. McNicholas's actions were independent of the shooting and there is no evidence that McNicholas ordered Lobdell to fire his gun at Makarowsky or that he ordered officers not to knock and announce. Indeed, his safety plan specifically required a knock and announce.

Plaintiffs rely on Seventh Circuit authority to the effect that supervisors may be liable under § 1983 if constitutional rights are violated "as a result of the superiors' mere acquiescence in such behavior." *Hampton v. Hanrahan*, 600 F2d. 600 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980). In *Hampton*, the supervisors were found to be potentially liable because the search that was executed and planned by them used a disproportionate number of police officers, weapons that included a sawed-off shotgun and a machine gun, and a 4:00 a.m. execution time in order to take the suspects by surprise. *Id.* at 612. In *Hampton*, both officers and suspects filled the room with an array of gunfire as officers breached the doorway. *Id.* at 614.

In the instant case, there is nothing to suggest McNicholas used excessive weaponry or excessive personnel, and Plaintiffs have not asserted that he did. It is undisputed that two shots were fired by Lobdell, and no other police officers fired their weapons. Dkt. #1, ¶5.10. The only claim against McNicholas is that he was in charge of an operation that may or may not have knocked and announced its presence. Even assuming the knock and announce was absent, as noted above, it is irrelevant for purposes of this motion. *Iqbal*–not *Hampton*– is the applicable law here. Supervisors are liable only for their own actions or misconduct, not those of their subordinates. *Iqbal*, 129 S.Ct. at 1949.

Plaintiffs also assert that the timing of the search warrant - after midnight - makes it unreasonable. Dkt. #1 at 7.5. Plaintiffs have not explained why the timing of the search was faulty, except to state that

officers could have "arrest[ed] PAULSEN in broad daylight" on June 13, 2007 when officers were conducting surveillance of Paulsen's home. Dkt. #1, ¶s 5.5, 5.6. The Federal Rules of Criminal Procedure state that search warrants should be executed in the daytime, unless the judge authorizes another time. F.R.Cr.P. 41(e)(2)(ii). The United States Code states that search warrants regarding controlled substances may be issued at any time of day. 21 U.S.C. § 879. Washington State has no temporal requirement and Washington courts have allowed search warrants to be executed at night. *See State v. Smith*, 15 Wn.App. 716, 719 (1976).

In the instant case, Defendants were asked to refrain from executing the search until after suspect Mosley had been apprehended by Portland Police. Dkt. #15 at 3. As a result, the officers did not arrest Paulsen on June 13, 2007 when they were surveying the home. There is no authority or evidence suggesting that executing a search warrant at 12:05 a.m. was improper, or was itself the cause of any constitutional violation. As a matter of law, the timing of the search warrant does not render it unreasonable.

Finally, Plaintiffs assert that the real "pretext" behind the search warrant was to confiscate marijuana and money from Paulsen's home, even though these items were not specifically listed in the search warrant. Dkt. #1, ¶ 5.6. Plaintiffs claim that this motivation should have been stated in the affidavit in support of the search warrant. *Id.* The Supreme Court has never held "that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 812 (1996). Plaintiffs do not assert that the warrant itself was invalid, only that the execution of the warrant was invalid. Defendants' motives are irrelevant. Moreover, even if the motives were not fully disclosed, that does not mean McNicholas may be held vicariously liable. Even if the "subordinate had a discriminatory purpose," it would not amount to a constitutional violation. *Iqbal*, 129 S.Ct. at 1949.

Plaintiffs have offered no evidence to show that McNicholas's own conduct violated Makarowsky's Fourth Amendment rights. Nor have they offered evidence to show that McNicholas's actions set into motion a series of events that he reasonably should have known would violate Makarowsky's constitutional rights.

ORDER
Page - 8

There is no causal link between the alleged failure to knock and announce and the shooting of Makarowsky. Accordingly, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' claims against them are **DISMISSED WITH PREJUDICE.**

    **IT IS SO ORDERED.**

    Dated this 30th day of November, 2010.

                              RONALD B. LEIGHTON
                              UNITED STATES DISTRICT JUDGE