Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

THE ESTATE OF SEAN THOMAS MAKAROWSKY, *et al.*,

    Plaintiffs,

vs.

STEVE LOBDELL, *et al.*,

    Defendants.

No. C10-5423 RBL

ORDER
[Dkt. **#s** 27, 59, 65]

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [Dkt. #27], Plaintiffs' Motion for Leave to Amend its Complaint [Dkt. #59] and Plaintiffs' Motion to Amend their Admissions [Dkt. #65]. Defendants' Motion is based on their claim that the evidence establishes that Plaintiff Makarowsky pointed a gun at Officer Lobdell immediately prior to Lobdell's use of deadly force, and that Plaintiffs' Excessive Force claim therefore fails as a matter of law.

Defendants' Motion[1] is based in part on the Plaintiffs' Responses to their Request for Admissions, in which Plaintiffs' admitted that Makarowsky was holding a loaded pistol when he was shot. Plaintiffs' Motion to Amend their Admissions is based on their claim that this was inaccurate, and that discovery has led them to believe and thus contend that Makaraowsky was

---

[1] Defendants also seek summary judgment on Plaintiffs' familial relationship claims, arguing that there is no evidence whatsoever that Lobdell acted with a purpose to harm Makarowsky or acted for purposes unrelated to law enforcement objectives. The City of Vancouver also seeks summary judgment, based on its claim that none of its officers violated the Plaintiffs' rights.

1

holding a cell phone, and not a gun, in his dominant hand when he was shot. Plaintiffs' Motion to Amend their Complaint seeks to incorporate this factual allegation into their Complaint. Defendants oppose both Motions to Amend, and argue that they are entitled to summary Judgment in any event.

**BACKGROUND**

The facts of this case are well known to the parties and, because the Court has already ruled on a different set of Defendants' Motion for Summary Judgment, to the Court. *See* Prior Order Granting Defendants McNicholas and Cook's Motion for Summary Judgment, Dkt. #26. It is apparently undisputed that Makarowsky was in the home legally, he had no criminal record, he possessed the gun legally, and that the warrant the officers were executing did not target Mr. Makarowsky. It is also undisputed that he was on the phone with his girlfriend at the time the officers arrived at the home, and either immediately before or at the time he was killed.

In addition, the parties make the following contentions. Defendants argue the only evidence (Lobdell's testimony, forensic analysis, and a shooting re-creation commissioned by the Defendants) establishes that Lobdell shot Makarowsky twice, after Makarowsky pointed a gun at Lobdell through a window. Specifically, Defendants claim that the window had a (closed) "Levolor" blind on it, and that the blind was not damaged by the two .45 caliber bullets Lobdell fired at Makarowsky. From this, they claim that the only possible inference is that Makarowsky moved the blind and showed himself and his weapon to Lobdell. Lobdell claims[2] that Makarowsky raised his gun in Lobdell's "general direction," that Lobdell was threatened, and he justifiably shot Makarowsky. Lobdell and the other Defendants seek judgment as a matter of law that Lobdell's use of deadly force was not excessive and that he is entitled to qualified immunity in any event.

Plaintiffs respond by contending that, at the time the officers arrived at the home to

---

[2] Lobdell also testified that Makarowsky did *not* touch the blinds. *See* Dkt. # 28, at p. 36 -37.

execute the warrant, Makarowsky was on a black and silver "flip phone" with his girlfriend, Megan Hays. Hays has testified Makarowsky told her "just a sec, I'll have to call you back," and she heard a dog bark and a loud thump or noise and the phone went dead. Hays did not hear any officer announce their presence, and did not hear Makarowsky make any statement about police at the door or in the yard. Plaintiffs also rely on the testimony of a neighbor, Richard Ives, who similarly heard a dog bark and gunshots. He claims he was confronted at gunpoint by an officer who asked him, "You heard us knock and announce, didn't you?" He claims he did not hear the officers so announce, and felt he was being intimidated into saying he did.

Plaintiffs also contend that Makarowsky did not move the blinds, based on the fact that neither Officer Schmidt (who processed the crime scene), nor Officer Hemstock (who did so again after Schmidt) found Makarowsky's prints on the blind. They also rely on the fact that Schmidt did not note, photograph or otherwise process the black flip phone. Hemstock did find the phone, and determined that Makarowsky was talking to Megan Hays from 23:52 June 15, 2007, until 00:09 or 00:10 hours on June 16, 2007. The warrant was executed at 00:06 hours. At 00:10, Sgt. McNicholas called for assistance for "AMR Code 3." There was no additional radio or other communication for 15 minutes. Defendants have not explained what occurred during that period.

Hemstock confirmed Makaraowsky's call to Hays, and confirmed that she was speaking to Makarowsky at the time of the shooting. A month after his "follow up" investigation, Hemsotck was transferred to property crimes.

Lobdell concedes he realized before the shooting that Makarowsky was not the "guy they were looking for" and he testified that Makarowsky did not approach the window. Lobdell does claim that he saw a gun in Makarowsky's hand, but did not immediately claim Makarowsky pointed it at him. Plaintiffs emphasize that Lobdell's version of the events got clearer (and more favorable to his position) with time, but he did not ever mention or explain

3

the flip phone. Indeed, Plaintiffs point out, none of the seven officers involved discussed or acknowledged the flip phone in their interviews. None mentioned it to subsequent investigators, though it was apparent in the photograph taken of Makarowsky in the spot he fell.

Officer Schmidt, who did the subsequent forensic work on the scene, spent 6 hours at the scene, took 400 photographs, and failed to locate, photograph or otherwise document the flip phone. Plaintiffs contend that a reasonable inference from this evidence is that the Defendants consciously chose to ignore the phone, because Makarowsky was holding it, and not a gun, at the time he was shot. Defendants argue that this is speculation and insufficient to defeat summary judgment.

**DISCUSSION**

**A. Plaintiffs' Motion to Amend their Complaint**.

Plaintiffs seek to Amend their complaint to allege factually that Makarowsky was holding a cell phone, and not a gun, when he was killed. Defendants claim that Plaintiffs' effort is a late and futile attempt to avoid summary judgment.

Under Fed. R. Civ. P. 15, this Court must be extremely liberal in considering motions to amend the pleadings. *See Price v. Kramer,* 200 F.3d 1237, 1250 (9th Cir. 2000), cert. denied, 531 U.S. 816 (2000). The purpose of the rule is to encourage decisions on the merits rather than on the precision (or imprecision, as the case may be) of the pleadings. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

There is ample evidence that Makarowsky was on the phone when he was shot. The case will be resolved on the merits, including on the basis of facts discovered over the course of the litigation. Plaintiffs' Motion to Amend their Complaint [Dkt. #59] is GRANTED and Plaintiff's proposed Amended Complaint is deemed filed.

**B. Plaintiffs' Motion to Amend their Admissions**.

Plaintiffs seek to amend their Admissions to "deny" the request that sought their

acknowledgment that Makarowsky was holding a gun, with the safety off, at the time he was shot. Plaintiffs claim that discovery has led them to the conclusion, as described above. Defendants oppose the proposed amendment, arguing that the facts is "conclusively established" and that Plaintiffs have not met the standard they concede governs their request:

Any matter admitted under Rule 36 "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" under Rule 36(b). Fed. R. Civ. P. 36(b). Rule 36(b) establishes a two-part test that *must* be satisfied in order to authorize a district court to grant leave to a party desiring to withdraw an admission. *Conlon*, 474 F.3d at 621. Those two elements, which originate in the rule itself, are: (1) "the presentation of the merits of the action will be subserved," and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b). In applying this test, however, "'[t]rial courts [have been] advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission.'" *Conlon*, 474 F.3d at 621 (quoting *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir.1985)).

Plaintiffs argue that amending (withdrawing) the Admission would lead to the presentation of the case to the jury on the merits, and emphasizes that the Defendants will not be prejudiced by doing so. The court agrees. As is discussed above, there is evidence from which a jury could find that Makarowsky was holding a phone and not a gun when he was shot. The Plaintiffs' Motion to Amend their Admissions [Dkt. #65] is GRANTED.

**C. Summary Judgment Standard**.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

5

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### D. Qualified Immunity.

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982).

The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Thus, only gross incompetence is punished; reasonable mistakes are immunized.

In analyzing a qualified immunity defense, the Court must determine: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful. *See Gabbert v. Conn*, 131 F.3d 793, 799 (9th Cir.1997); *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir.1996). To be clearly established, the law must be sufficiently clear that a reasonable official would

understand that his or her action violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court should look to whatever decisional law is available to determine whether the law was clearly established at the time the alleged acts occurred. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985). The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

The Supreme Court has recently held "that the *Saucier* protocol should not be mandatory in all cases . . . [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established.

**E. Plaintiffs' Fourth Amendment Claims.**

Plaintiffs claim that Lobdell deprived him of his Fourth Amendment Constitutional rights by using excessive (deadly) force on him, and by "seizing" him unlawfully. They assert claims under 42 U.S.C. §1983 based on these alleged violations.

The standard against which an excessive force claim must be measured is well-settled, and accurately set out in Defendants' Motion: A plaintiff's claim that deadly force was excessive is analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007). Employing a totality of the circumstances approach, an officer may constitutionally use deadly force if there is "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Long*, 511 F.3d at 906 (citations and internal quotation marks omitted).

Whether such probable cause exists is an analysis undertaken from the eyes of the officer at the time of the incident, "'rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). For this reason, the Supreme Court has emphasized that "[t]he calculus of reasonableness [under the Fourth Amendment] must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The Plaintiffs' theory is that Makarowsky was lawfully in the subject home, and did not know there were officers outside. He was on the phone with his girlfriend, and was holding a phone, and not a gun, when he was shot. As they are entitled to, Plaintiffs point to circumstantial evidence supporting this theory, including Lobdell's own statements, the testimony of Megan Hays, the fact that the phone was "on a call" when Makarowsky was shot, and the fact it was near his right hand after he was killed. The neighbor and the girlfriend did not hear any warning; the neighbor claims he thought he was being pressured to claim he had. They also point to some perhaps unusual activity surrounding the aftermath of the shooting. The phone was not mentioned by any of the seven officers and was not noted, photographed or explained in any post incident reports. There was an unusual gap in communication, and the second, more thorough investigating officer was shortly thereafter relieved of his duties as lead detective on the case and moved to a different department.

Despite Defendants' claims to the contrary, there is also evidence from their side which undermines the story that they claim the court must accept as a matter of law. Lobdell himself testified that he did not think Makarowsky moved the blinds, and he did not immediately claim

8

that Makarowsky pointed the gun at him. The gun that Makarowsky did possess was not near his right hand when he fell, the phone was.

Plaintiffs also argue, correctly and persuasively, that in such cases the court is not bound to and should not simply accept the potentially self-serving account by the shooting officer, where the only other witness is dead. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("In other words, the court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably.")

Under these circumstances, the Court cannot say as a matter of law that the Officer acted reasonably, and the Plaintiffs have met their Summary Judgment burden of establishing that a violation of his Fourth Amendment rights occurred.

**F. Makarowsky's rights were clearly established**.

The final inquiry is whether Officer Lobdell is entitled to qualified immunity. The right to be free from excessive force is clearly established; there are countless Supreme Court opinions establishing, recognizing and explaining it. If Makarowsky pointed a gun at Lobdell, then Lobdell was entitled to shoot. If, on the other hand, he was holding a phone, then the use of deadly force was not reasonable, and was a violation of Makarowsky's clearly-established constitutional rights. Qualified Immunity is not applicable where, as here, the core question is one for the jury. Defendant Lobdell's Motion for Summary Judgment is DENIED.

**G. Defendants' remaining Motions for Summary Judgment are Granted**.

There other Motions to which the Plaintiffs did not respond, and which are well taken.

Plaintiffs concede their familial relationship claim is not supported, and the Motion for Summary Judgment on that claim is GRANTED. Plaintiffs' claims against Officer Acee are not supported, and the Motion for Summary Judgment dismissing all claims against him is GRANTED.

The City's Motion is based (only on) its claim that none of its officers violated Makarowsky's rights. To the extent is it based on that argument, the Motion is DENIED. However, the court notes that Plaintiffs have not made out a *Monell* claim in response to the Defendants' Motion. Defendants' Motion for Summary Judgment [Dkt. #27] on Plaintiffs' claims against Officer Lobdell is DENIED.

**IT IS SO ORDERED.**

DATED this 22nd day of June, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE